IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| Red River Fiber Optic Corporation,<br><br>          Plaintiff,<br><br><br>vs.<br><br><br>Verizon Services Corp., Verizon Business<br>Network Services Inc., Verizon Enterprise<br>Delivery LLC, AT&T Corp., Qwest Corporation,<br>and Qwest Communications Corporation,<br><br>          Defendants. | Case No.:  2:08-cv-00215-TJW-CE |

**DEFENDANTS' MOTION TO TRANSFER VENUE
TO THE UNITED STATES DISTRICT COURT FOR THE
<u>NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION</u>**

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................ 1

II.  LEGAL ANALYSIS.......................................................................................... 2

   A.   Applicable Law ........................................................................................ 2

      1.   *TS Tech* addresses plaintiff's choice of venue in patent cases........................................ 3

      2.   Local sales of a product sold nationwide do not prevent transfer to a more convenient forum under *TS Tech*............................................................... 3

   B.   The *Gilbert* factors strongly favor transfer to Dallas.......................................................... 4

      1.   The cost of attendance for willing witnesses dictates transfer to Dallas. ....................... 5

      2.   The relative ease of access to sources of proof dictates transfer to Dallas. .................. 11

      3.   The local interest in having localized interests decided at home dictates transfer to Dallas. ............................................................................................................ 13

      4.   The remaining *Gilbert* factors are neutral at best and thus dictate transfer. .................. 14

III.   CONCLUSION............................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Gulf Oil Corp. v. Gilbert*,
    330 U.S. 501 (1947).................................................................................................5

*In re TS Tech USA Corp.*,
    551 F.3d 1315 (Fed. Cir. 2008).........................................................1, 2, 3, 4, 5, 6, 11, 13, 14

*In re Volkswagen AG*,
    371 F.3d 201 (5th Cir. 2004) .................................................................................6

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) .........................................................................3, 4, 5, 6, 11, 15

*MHL Tek, LLC v. Nissan Motor Co.*,
    No. 2:07-CV-289, 2009 WL 440627 (E.D. Tex. Feb. 23, 2009)..............................................4

*Novartis Vaccines and Diagnostics, Inc. v. Hoffman-La Roche Inc.*,
    --- F. Supp. 2d ---, 2009 WL 349760 (E.D. Tex. Feb. 3, 2009)............................................4, 5

*Odom v. Microsoft Corp.*,
    --- F. Supp. 2d ---, 2009 WL 279968 (E.D. Tex. Jan. 30, 2009) ............................................4

*PartsRiver, Inc. v. Shopzilla, Inc.*,
    No. 2:07-CV-440, 2009 WL 279110 (E.D. Tex. Feb. 3, 2009)................................................4

*VE Holding Corp. v. Johnson Gas Appliance Co.*,
    917 F.2d 1574 (Fed. Cir. 1990)...............................................................................5

STATUTES

28 U.S.C. § 1400...........................................................................................................5

28 U.S.C. § 1404(a) .................................................................................................2, 4, 6

## I.    INTRODUCTION

On December 29, 2008, in *In re TS Tech USA Corp.*, 551 F.3d 1315 (Fed. Cir. 2008), the Federal Circuit clarified the standard for venue transfers in patent infringement lawsuits in the Fifth Circuit.  The Federal Circuit held that a plaintiff's choice of venue is not entitled to any deference if another district or division would clearly be more convenient.  The Federal Circuit also held that sales of an accused product in the plaintiff's chosen venue provide no reason for preferring it over other locations in which the product is also sold.  Both holdings are highly relevant to Plaintiff's choice of Marshall as the venue for this lawsuit, as that choice is based solely on the fact that the accused products are sold nationwide.  Based on the Federal Circuit's clarification of the venue standard, Defendants respectfully move to transfer this lawsuit to the United States District Court for the Northern District of Texas, Dallas Division.

Transfer is appropriate because Dallas is clearly a more convenient venue than Marshall for all parties involved in this litigation.  Aside from the unexceptional fact that the accused products are sold nationwide, this lawsuit has *no* connection to Marshall.[1]  None of the parties, potential witnesses, or relevant evidence is located in Marshall.[2]  The generic venue allegations in Plaintiff's Complaint — based solely on the fact that some accused products are available to consumers throughout the United States — confirm that there is no reason to prefer Marshall over a clearly more convenient venue under the standard of *TS Tech*.

---

[1]  The only accused system of defendants Verizon Services Corp, Verizon Business Network Services, Inc. or Verizon Enterprise Delivery LLC (collectively "Verizon") that Plaintiff has identified, FiOS, is not provided in the Marshall Division, but is provided in Dallas.  Declaration of Glenn A. Wellbrock (attached as Exhibit A) ¶ 13.  U-verse, the only accused system of AT&T Corp. ("AT&T") that Plaintiff has identified, is also not available in the Marshall Division, but is provided in Dallas.  Declaration of Scott Mair (attached as Exhibit B) ¶¶ 13-14.  Plaintiff has failed to identify any accused product of Qwest.

[2]  For instance, Plaintiff has not asserted that Ms. Zelikovitz, whom Plaintiff characterizes as a "primary fact witness," has any connection whatsoever to Marshall.  *See* Motion to Expedite Trial Setting, Dkt. # 80 at 2.  Nor does Plaintiff allege that it sustained any damages in the Eastern District.

In contrast to Marshall, Dallas has strong connections to this lawsuit and to the Plaintiff as well.  Plaintiff is itself located in Dallas.  Third Amended Complaint ¶ 1.  Its lead counsel in this case at McKool Smith, PC, and its counsel at Hemingway & Hansen, LLP, are located in Dallas.  Indeed, Plaintiff's counsel D. Scott Hemingway, whose Dallas office is in the same building as the Plaintiff's headquarters, will be a key witness in this case because he represented the patent owner in the reexamination of the '478 Patent.

Furthermore, much of the evidence relevant to Plaintiff's claims against the Defendants is located in and directly around Dallas, including many of Verizon's and AT&T's key witnesses (as described in detail below and in the attached declarations).  Dallas is also the site of some of Defendants' key network nodes and operations centers.  For example, as discussed below, a fiber transport network for Verizon and the network operations center for AT&T's "U-verse" are located in and directly around Dallas.

Under *TS Tech*, the Court should transfer this case to Dallas because it is clearly a more convenient venue than Marshall for this lawsuit.

## II.    LEGAL ANALYSIS

### A.    Applicable Law

28 U.S.C. § 1404(a) governs transfers of venue in patent infringement lawsuits.  28 U.S.C. § 1404(a); *In re TS Tech*, 551 F.3d at 1319.  Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  The Federal Circuit applies the law of the appropriate regional circuit to venue issues in patent cases.  *In re TS Tech*, 551 F.3d at 1319.  Therefore, Fifth Circuit law applies to this motion.

1.      *TS Tech* **addresses plaintiff's choice of venue in patent cases.**

A little over two months ago, the Federal Circuit issued its opinion in *TS Tech* explaining the application of the Fifth Circuit's October 10, 2008 decision in *In re Volkswagen of Am., Inc.*, 545 F.3d 304 (5th Cir. 2008) (*Volkswagen II*) (*cert. denied* February 23, 2009), to patent infringement cases.   Before *TS Tech*, district courts often gave considerable deference to a plaintiff's choice of venue in patent cases.   But in *TS Tech*, the Federal Circuit clarified that district courts must transfer the case if the new venue is "'clearly more convenient'" without giving any weight to the plaintiff's original choice.   *See In re TS Tech*, 551 F.3d at 1319 (quoting *Volkswagen II*, 545 F.3d at 315).   Although the defendant, as the moving party, bears the burden of persuasion on a motion to transfer, the Federal Circuit held that a district court should not give deference to the plaintiff's chosen venue in balancing the relative convenience of two locations. *Id.* at 1320; *see also Volkswagen II*, 545 F.3d at 314-15.

2.      **Local sales of a product sold nationwide do not prevent transfer to a more convenient forum under** *TS Tech***.**

Here, the ***only*** connection to Marshall is Plaintiff's suggestion that allegedly infringing products and services are available in the Eastern District.   Third Amended Complaint ¶¶ 2-7, 9. But as discussed above, the only two products Plaintiff has identified, Verizon's FiOS and AT&T's U-verse services, are not offered in Marshall.   Furthermore, in *TS Tech* the Federal Circuit addressed how local sales of a product sold nationwide affect the venue analysis.   *In re TS Tech*, 551 F.3d at 1321.   Before *TS Tech*, district courts frequently declined to transfer patent cases if at least some sales occurred in the district or division in which the court sat, regardless of whether that venue had any other connection to the parties, witnesses, or facts of the case.   But under the standard announced in *TS Tech*, local sales within the plaintiff's chosen venue provide

*no* reason to prefer that venue over other more convenient forums in which the product is also available. *Id.*; *see also Volkswagen II*, 545 F.3d at 318. As the Federal Circuit explained,

> Here, the vehicles containing TS Tech's allegedly infringing headrest assemblies were sold throughout the United States, and thus the citizens of the Eastern District of Texas have no more or less of a meaningful connection to this case than any other venue . . . [I]t "stretches logic" to say the local interest factor weighed against transfer because such rationale "could apply virtually to any judicial district or division in the United States."[]

*In re TS Tech*, 551 F.3d at 1321 (quoting *Volkswagen II*, 545 F.3d at 318).

Where local sales of a nationwide product were the only connection to the district court's venue, the Federal Circuit held that the district court erred in declining to transfer the case. *Id.* at 1322-23. Even though *TS Tech* was decided a little over two months ago, several district courts have already applied its teachings, granting venue transfers in patent cases. *See, e.g.*, *Odom v. Microsoft Corp.*, --- F. Supp. 2d ---, 2009 WL 279968 (E.D. Tex. Jan. 30, 2009) (attached as Exhibit D); *PartsRiver, Inc. v. Shopzilla, Inc.*, No. 2:07-CV-440, 2009 WL 279110 (E.D. Tex. Feb. 3, 2009) (attached as Exhibit E).[3]

**B.    The *Gilbert* factors strongly favor transfer to Dallas.**

Plaintiff accuses Defendants of infringement by making, using, offering to sell, and selling certain "fiber optic transmission systems," specifically naming Verizon's FiOS and AT&T's U-verse offerings in its Complaint, and alleging that these systems are offered

---

[3] While two recent cases denied transfer, *see Novartis Vaccines and Diagnostics, Inc. v. Hoffman-La Roche Inc.*, --- F. Supp. 2d ---, 2009 WL 349760 (E.D. Tex. Feb. 3, 2009) (attached as Exhibit F) and *MHL Tek, LLC v. Nissan Motor Co.*, No. 2:07-CV-289, 2009 WL 440627 (E.D. Tex. Feb. 23, 2009) (attached as Exhibit G), they are distinguishable. In *Novartis Vaccines*, a case with decentralized witnesses, the court denied transfer, finding that the Eastern District of Texas was more central than the proposed forum, the Eastern District of North Carolina. There, most of the relevant documents were not in North Carolina and a transfer would "increase the distance that numerous witnesses would be forced to travel." *Novartis Vaccines,* 2009 WL 349760 at *4, *6. In *MHL*, transfer was denied because witnesses were not concentrated in a geographical area and the movant failed to identify witnesses and the general subject matter of expected testimony. *MHL*, 2009 WL 440627 at *4 n.6, *5. The facts of those cases stand in stark contrast to this case, where Defendants demonstrate that there is one forum, Dallas, that is more centrally located than Marshall, has significant connections to the action, and is clearly more convenient for a significant number of witnesses. In contrast to *MHL*, Defendants provide sworn testimony identifying names and locations of specific witnesses as well as the general subject matter of the testimony they are expected to provide. *See* Mair, Wellbrock and Jensen Declarations.

throughout the United States.  *See* Third Amended Complaint ¶¶ 2-7, 13.  The Northern District

of Texas, Dallas Division is unquestionably a venue in which this lawsuit originally "might have

been brought."  28 U.S.C. § 1404(a).  Because Dallas is a proper venue,[4] the only issue presented

here is whether Dallas is clearly more convenient than Marshall.  *In re TS Tech*, 551 F.3d at

1319.

As Judge Folsom observed in *Novartis Vaccines*, the convenience determination "is

essentially a balancing of the inconveniences that will transpire as a result of the plaintiff's

choice of venue."  2009 WL 349760 at *2.  In balancing the relative convenience of two venues,

courts in the Fifth Circuit consider eight private and public interest factors without deference to

the plaintiff's original choice of venue.  *In re Volkswagen II*, 545 F.3d at 315; *see also Gulf Oil

Corp. v. Gilbert*, 330 U.S. 501, 507 (1947).  The private interest factors are (1) the relative ease

of access to sources of proof; (2) the availability of compulsory process for witnesses; (3) the

cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a

case easy, expeditious, and inexpensive.  *Id.*  The public interest factors are (1) the administrative

difficulties flowing from court congestion; (2) the local interest in having localized interests

decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4)

the avoidance of unnecessary problems of conflict of laws or the application of foreign law.  *Id.*

Three of these factors strongly favor transferring this lawsuit to Dallas, while the other

five factors are at least neutral and provide ***no*** support for keeping this lawsuit in Marshall.

---

[4]  28 U.S.C. § 1400 sets forth the minimum requirements for proper venue in patent cases.  Under the first part of 28 U.S.C. § 1400(b), venue in a patent infringement case is proper anywhere that the "defendant resides."  Interpreting this statute, the Federal Circuit has held that corporations reside in any district in which they are subject to personal jurisdiction at the commencement of the lawsuit.  *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1584 (Fed. Cir. 1990).  Thus, Dallas is a proper venue because all Defendants were subject to personal jurisdiction there at the time this lawsuit commenced.  *Id.*

Given the strong reasons for transfer to Dallas, and the absence of any competing reasons to keep this lawsuit in Marshall, this Court should grant Defendants' motion to transfer.

1.       **The cost of attendance for willing witnesses dictates transfer to Dallas.**

The likely cost and inconvenience to witnesses of attending trial favors transfer to Dallas. In evaluating this factor, the Federal Circuit recognized a "'100-mile' rule, which requires that '[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled.'" *In re TS Tech*, 551 F.3d at 1320 (quoting *In re Volkswagen AG*, 371 F.3d 201, 204-05 (5th Cir. 2004) (*Volkswagen I*)). "It goes without saying that '[a]dditional distance [from home] means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment.'" *Id.* (quoting *Volkswagen I*, 371 F.3d at 205) (alterations in original). Moreover, district courts should consider both economic costs of an inconvenient venue and "personal costs associated with being away from work, family, and community." *In re Volkswagen II*, 545 F.3d at 317.

a.       **Verizon**

Many Verizon witnesses who will testify concerning the planning, design, and testing of Verizon's fiber optic network architecture work in Irving and Richardson, Texas, directly adjacent to Dallas and within the Northern District. Wellbrock Declaration ¶ 4. For example, Glenn Wellbrock (Verizon's Director – Technology, Transport Network Architecture & Design in Corporate Technology) is expected to be a witness concerning the planning and design of Verizon's network architecture and technology. *Id.* ¶ 5. He works in Irving and resides more than 100 miles from Marshall. *Id.*

Verizon also has a number of employees in Irving and Richardson who plan, design, develop, test, and implement fiber optic network architecture, systems, and equipment. *Id.* ¶ 6. These include Network Planning members David Templeton (Manager, Transport Planning), Russell Bykerk (Director, Access Planning), and others whose offices are in Irving, as well as Christopher N. DelRegno (Principal Member of Technical Staff – IP Network Architecture and Design, Corporate Technology), whose office is in Richardson. *Id.* These Verizon employees are likely to be important witnesses in the case, providing testimony about Verizon's FiOS fiber optic network architecture, the components and equipment deployed, and the locations and future plans for such architecture, components and/or equipment. *Id.* Each of them works and resides more than 100 miles from Marshall. *Id.*

Furthermore, Verizon maintains a network equipment testing lab in Richardson that tests new network elements before they are approved for implementation and deployment into real-world networks. *Id.* ¶ 7. John Fasolino (Manager – Technology, Optical Systems Testing Transport) heads that lab with a team of approximately seven individuals who work in the lab and perform testing. *Id.* These employees will be able to provide important testimony about the testing and performance of elements of Verizon's fiber optic network. *Id.* Again, each works and resides more than 100 miles from Marshall. *Id.*

Additionally, other members of Verizon's Network Planning and Engineering groups in Richardson may, depending on Plaintiff's infringement contentions, testify to issues relating to Verizon's fiber optic network architecture and design, the components and equipment deployed, and the functionality of such components and equipment. *Id.* ¶ 8. These employees include Ricky Price (Vice President – Network Engineering) and Thomas Meagher (Director – Technology, Domestic Network Planning) – who work at the Richardson office. *Id.*

Furthermore, James F. Williams (Director – Technology, Telephony Application & Services Planning) has information and may testify concerning the components and equipment deployed in Verizon's fiber optic network and the functionality of such components and equipment. *Id.*[5] These individuals each work and reside more than 100 miles from Marshall. *Id.*

In short, none of Verizon's potential witnesses regarding the accused systems live or work within 100 miles of Marshall (in contrast to at least fifteen potential Verizon witnesses located within 100 miles of Dallas). *Id.* ¶¶ 11-12.

### b.    AT&T

Numerous witnesses concerning Plaintiff's allegations against AT&T live and work in very close proximity to Dallas, while none are in or near Marshall.  Of the 1000 AT&T employees who work full or part time on the U-verse product, 500 are based in Irving and 60 in Richardson — all within the Northern District of Texas.  Mair Declaration ¶ 6.  None are based in or near Marshall. *Id.*

AT&T has many employees in Irving who oversee routing and switching of packets within the U-verse subscriber access network.  These include Glenn Garbelman (Director of the Network Operations Center), who is likely to be an important witness concerning IP routing and packet switching in the U-verse access network.[6] *Id.* ¶ 7a.  His 16 Area Managers and the 79 Senior Network Engineers they manage, also in Irving, are responsible for building, monitoring, and maintaining various aspects of AT&T's U-verse network and can also provide testimony concerning routing and packet switching in the U-verse access network. *Id.* ¶ 7b.

---

[5]  Additional potential witnesses in this case that may testify regarding Verizon's FiOS fiber optic networks, depending on Plaintiff's infringement contentions, are located in Ashburn and Reston, Virginia, Baltimore, Maryland, Waltham, Massachusetts, and Basking Ridge, New Jersey. *Id.* ¶ 9.  Dallas would be a much more convenient forum than Marshall for these witnesses, given the close proximity of Dallas-Fort Worth International Airport. *Id.*

[6]  AT&T does not agree that any of its networks, including U-verse, fall within the scope of the asserted claims.  The witnesses and packet switched video services other evidence cited in this motion relate to U-verse, the only AT&T system Plaintiff has identified.  AT&T witnesses and evidence cited herein would be relevant at least to establish non-infringement.

Witnesses knowledgeable about key U-verse service platforms are also in Irving.  Kenny Winburn (Director Video Operations Center — IP Operations) is knowledgeable about the IP Television ("IPTV") platform and the thousands of servers running IPTV applications for U-verse customers.  *Id.* ¶ 7c.  Winburn may be an important witness in this case concerning the packet switched video services provided to U-verse subscribers.  *Id.*  Furthermore, the 12 Area Managers and 50 Senior Network Engineers in Irving who work on building, monitoring, growth, and maintenance of the IPTV platform and its applications can also provide testimony about the packet switched video services provided by U-verse.  *Id.*

AT&T's witnesses concerning IPTV project management and service operations are also in Irving.  *Id.* ¶ 7e.  Tom McCrady (Director of Quality Management and Procedure Processes) and his six Area Managers will be able to provide testimony about the packet switched video services provided to U-verse subscribers.  *Id.*

In addition, AT&T's witnesses who can testify about new Video Hub Office ("VHO") build activities and all U-verse network change management are also in Irving.  *Id.* ¶ 7d.  This includes Steve Davis (Director Network Operations Center) and his team of five Area Managers and 19 Senior Network Engineers who work on new VHO build activities and change management.  Davis and his team will be able to testify about locations, plans, and operations for VHOs that provide packet switched video services.  *Id.*

None of the individuals named above who are potential witnesses for AT&T live or work within 100 miles of Marshall.  *Id.* ¶ 7f.  In contrast, numerous potential AT&T witnesses with knowledge of the accused system live and work within 100 miles of Dallas.[7]  *Id.* ¶ 7a-e.

---

[7]  Scott Mair (Vice President, Global Network Operations), who has worked on U-verse projects since 2006 and is involved in supervising the development of U-verse services and the U-verse network, works in Irving and lives in Frisco, 30 miles from Dallas and 170 miles from Marshall.  *Id.* ¶¶ 2-4.  Garbelman lives in McKinney, 30 miles from Dallas and 160 miles from Marshall.  *Id.* ¶ 7a.  Winburn lives in Weatherford, 60 miles west of Dallas but 212 miles

### c.    Qwest

The Northern District of Texas is also a more convenient forum for Qwest Corporation ("QC") and Qwest Communications Corporation ("QCC").  While QC and QCC have employees and facilities in Texas, those facilities and employees are located outside the Eastern District. Declaration of Thomas Jensen (Exhibit C) ¶¶ 4, 5, and 7.  Those facilities and employees are involved in the daily operation and maintenance of QCC's fiber optic network in Texas.  *Id.* ¶¶ 4, 7.  QCC and QC have no network, operations, or employees within 100 miles of Marshall.  *Id.* ¶ 8.  All of the QC and QCC employees relating to the planning, development, testing, and architecture of QCC's and QC's fiber optic networks are located in Denver, Colorado.  *Id.* ¶ 10. Given the facilities that QCC and QC have in Dallas and the Northern District, and the ease of travel of QC and QCC employees in and out of Dallas-Fort Worth International Airport, transferring this case to the Northern District of Texas would be far more convenient for Qwest and its employees than keeping the case in Marshall.

In sum, a multitude of Defendants' witnesses with subject matter expertise regarding the accused systems are in and around Dallas.  By contrast, Defendants are not aware of ***any*** potential witness in this case that lives within 100 miles of Marshall.  Thus, all witnesses would incur substantial economic and personal costs by having to travel to attend trial in Marshall.  The trial of this case may last multiple weeks and involve extensive testimony from witnesses who live and work far outside of Marshall.  If the trial of this lawsuit were held in Marshall, each of these witnesses would have to stay overnight in Marshall for several days, causing them to miss family, work, and civic engagements.  If, however, the trial is held in Dallas — much closer to where many of the witnesses live and work — these witnesses will endure far fewer hardships.

---

from Marshall.  *Id.* ¶ 7c.  McCrady lives in Lewisville, 24 miles from Dallas and more than 170 miles from Marshall. *Id.* ¶ 7e.  Davis lives in Frisco, 30 miles from Dallas and more than 170 miles from Marshall.  *Id.* ¶ 7d.

The cost of attendance for willing witnesses weighs heavily in favor of transfer.

**2.      The relative ease of access to sources of proof dictates transfer to Dallas.**

The "relative ease of access to sources of proof" concerns the location of "physical and documentary evidence relevant to" the case. *In re TS Tech*, 551 F.3d at 1320-21.   The physical location of documents and evidence is an important factor despite advances in copying and electronic data transfer technologies.[8]  *Id.* at 1321; *see also Volkswagen II*, 545 F.3d at 316.

Here, where the evidence regarding the accused "fiber optic transmission systems" is both documentary and physical, this factor strongly favors Dallas over Marshall.  While some of Defendants' evidence is not located in Dallas, ***none*** of the evidence is in Marshall.

A substantial number of documents concerning Verizon's fiber optic network architecture are in Irving and Richardson.  Wellbrock Declaration ¶ 4.  Glenn Wellbrock, located in Irving, has documents relating to the planning and design of Verizon's fiber optic network architecture and technology.   *Id.* ¶ 5.   Verizon employees who work in Irving and Richardson have documents or other evidence relating to Verizon's FiOS fiber optic network architecture, the components and equipment deployed, as well as the locations and future plans for such architecture, components, and/or equipment.   *Id.* ¶ 4-6.   Verizon also maintains a network equipment testing lab in Richardson, which tests new network elements before they are approved for implementation and deployment into real-world networks.   *Id.* ¶ 7.   Verizon employees in Richardson have documents or other evidence relating to the testing and performance of elements of Verizon's fiber optic network, which will likely be a relevant subject at the trial of this case.   Additionally, other members of Verizon's Network Planning and Engineering groups

---

[8]  In *Volkswagen II*, the Fifth Circuit reaffirmed the importance of the "relative ease of access to sources of proof" in guiding the court's venue determination.  545 F.3d at 316.  The Fifth Circuit specifically rejected the argument that technological advances have diminished this factor's importance.  *Id.* ("That access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous.").

in Richardson have documents or other evidence relevant to Verizon's fiber optic network architecture and design, the components and equipment deployed, and the functionality of such components and equipment. *Id.* ¶ 8.

None of Verizon's document custodians or facilities regarding the accused FiOS system are located within 100 miles of Marshall,[9] but Verizon does have network operations in and around Dallas. *Id.* ¶ 10.

Numerous document custodians for AT&T are very close to Dallas, while none are in or near Marshall. Mair Declaration ¶¶ 7, 12. Garbelman and his managers in Irving have documents or other evidence relating to routing and switching data packets for subscribers in the U-verse access network. *Id.* ¶¶ 7a-b. Winburn and his 12 Area Managers and 50 Senior Network Engineers in Irving have documents or other evidence relating to packet switched video services provided to U-verse subscribers. *Id.* ¶ 7c. Also in Irving, McCrady and his 6 Area Managers have documents or other evidence relating to the packet switched video services provided to U-verse subscribers. *Id.* ¶ 7e. Davis and his team of 5 Area Managers and 19 Senior Network Engineers in Irving have documents or other evidence relating to locations, plans, and operations for VHOs providing packet switched video services to U-verse subscribers. *Id.* ¶ 7d.

None of AT&T's document custodians regarding the accused U-verse system are located within 100 miles of Marshall. *Id.* ¶¶ 12. And while U-verse has key network operations (including the Network Operations Center and Video Hub Offices) in and around Dallas, *id.* ¶¶ 7-8, there are no such operations within 100 miles of Marshall.[10] *Id.* ¶¶ 9-11.

---

[9]   Furthermore, Verizon does not offer or provide any FiOS services in the cities and counties in the Marshall Division of the Eastern District of Texas. Specifically, Verizon does not offer or provide any FiOS services in Atlanta, Avinger, Big Sandy, Daingerfield, Elysian Fields, Gilmer, Hallsville, Hughes Springs, Jefferson, Linden, Marshall, Naples, or Pittsburg, Texas. *Id.* ¶ 13. Verizon does not offer or provide any FiOS services in the Texas counties of Camp, Cass, Harrison, Marion, Morris, or Upshur. *Id.*

[10]   Within the Eastern District, U-verse is offered in McKinney, Allen, and Plano, and network components for providing U-verse services are present in those areas. *Id.* ¶ 13. However, U-verse is not offered elsewhere within the

Qwest also has no documents near Marshall relating to their fiber optic networks.  Jensen Declaration ¶ 10.

In sum, key documents and document custodians for Verizon and AT&T are located in the Dallas Division of the Northern District of Texas, while no key documents or custodians for any of the Defendants are located in the Marshall Division.  Thus, the relative ease of access to sources of proof also weighs heavily in favor of transfer to the Northern District of Texas, Dallas Division.

### 3.  The local interest in having localized interests decided at home dictates transfer to Dallas.

In *TS Tech,* the Federal Circuit clarified that the availability of a product accused of patent infringement within the plaintiff's chosen venue does not create any local interest in adjudicating a patent infringement lawsuit involving the product.  *In re TS Tech*, 551 F.3d at 1321.  In this case, some of the accused products are sold nationwide.[11]  With no evidence, witnesses, or parties located in or near Marshall, this Court has no greater local interest in deciding this lawsuit than any other district court in the United States.  Even Plaintiff, itself based in Dallas, does not contend that Marshall has any relevant connection to this lawsuit.

The Dallas division of the Northern District of Texas, by contrast, has significant local interests at stake.  Plaintiff maintains its principal place of business at Comerica Bank Tower in Dallas.   Third Amended Complaint ¶ 1.   Plaintiff's counsel D. Scott Hemingway, who represented the patent owner during the reexamination of the '478 Patent, has an office in the same building as Plaintiff's headquarters.  Request for Reexamination Transmittal Form, Exhibit

---

Eastern District, is not available in Marshall, and network components for U-verse services are not present in Marshall.  *Id.* ¶ 14.
[11]  Notably, however, neither FiOS nor U-verse is available anywhere within the Marshall Division.  Wellbrock Declaration at ¶ 13.  Within the Eastern District, U-verse is only available within the Sherman Division.  Mair Declaration ¶ 13.

H; *see also* Notice of Appearance of Counsel for D. Scott Hemingway, Dkt. # 14.   And Plaintiff's lead counsel at McKool Smith is based in Dallas.   Even the person whom Plaintiff calls a "primary" witness, the widow of the inventor, has no stated connection to Marshall. Motion to Expedite Trial Setting, Dkt. # 80 at 2.

Verizon and AT&T, however, have significant employees and facilities in and around Dallas.   Wellbrock Declaration ¶ 10; Mair Declaration ¶ 7.   Qwest has relevant operations and employees in Dallas and Fort Worth.   Jensen Declaration ¶ 7.   Local interest thus weighs strongly in favor of transfer to Dallas.

### 4.   The remaining *Gilbert* factors are neutral at best and thus dictate transfer.

The remaining *Gilbert* factors are all at least neutral.   Certainly none favor Marshall. Transferring this lawsuit to Dallas would not cause any disruption to the management or trial of this case.   The lawsuit is in its early stages.   Except for a motion to dismiss (withdrawn before being considered by the Court) and a motion to expedite trial, no party has engaged in any briefing or discovery, nor has the Court made a ruling on any substantive issue.   Indeed, the Court only recently held its initial case management conference on Friday, February 27, 2009.

Transfer to Dallas would not increase court congestion.   While it is difficult to generalize about docket congestion in different courts, there is little indication that district courts in Dallas are burdened more heavily than those in Marshall.   According to the Federal Judicial Center statistics for 2007 (the most recent available data), the median time from filing to trial in civil cases in which trials were completed was 19.4 months for the Northern District and 18.0 months for the Eastern District of Texas.[12]   This evidences no significant difference in congestion.

Judicial familiarity with the applicable law is also a neutral factor with respect to venue. Because all of the claims in this lawsuit arise under federal patent law, all federal courts are

---

[12]   These statistics are published at http://www.uscourts.gov/judbus2007/appendices/C10Sep07.pdf.

equally prepared to apply the law in this case.  *In re TS Tech*, 551 F.3d at 1320.  Effective May 1, 2007, the Northern District of Texas adopted local patent rules designed to streamline the conduct of patent cases, similar to those in effect in the Eastern District of Texas.  *See* Miscellaneous Order No. 62 (N.D. Tex. April 2, 2007).  The Northern District has had ample experience applying these patent local rules:  since May 1, 2007, 82 patent cases have been filed in the Northern District, 66 of which are presided over by judges in the Dallas division.[13]

The availability of compulsory process for witnesses is, at this point, neutral.[14]  This case is still in its early stages, and the parties have yet to identify third party witnesses who may need to testify.  There are likely no potential witnesses, however, within 100 miles of Marshall.

Finally, this lawsuit presents no issues regarding conflicts of laws or the application of foreign law.  Thus, this factor is also neutral.

## III.    CONCLUSION

Plaintiff has chosen a venue that is inconvenient to ***all*** parties.   Under the standard announced by the Federal Circuit in *TS Tech*, Dallas is clearly a more convenient venue for this lawsuit than Marshall for both Plaintiff and Defendants.   Accordingly, for the reasons stated above, this Court should transfer this lawsuit to the United States District Court for the Northern District of Texas, Dallas Division.

---

[13]   The number of cases filed in the Northern District of Texas was derived using the Civil Cases Report on the Northern District of Texas ECF/Pacer site by searching for all open and closed cases with Nature of Suit set as "830: Patent" between May 1, 2007 and February 15, 2009.  Because this report is limited to searching a period of 31 days or less, the search was conducted month-by-month from May 1, 2007 to February 15, 2009 and the search results were added together.

[14]   In *Volkswagen II*, the Fifth Circuit held that the ability of a court to exercise "absolute" subpoena power over witnesses is an important factor in determining venue.  *Volkswagen II*, 545 F.3d at 316-17.  In its analysis, the Fifth Circuit explicitly distinguished a district court's "absolute" subpoena power over witnesses that are located within 100 miles of the court from a district court's more limited subpoena power over witnesses outside this 100-mile limit, which is subject to motions to quash under Federal Rule of Civil Procedure 45(c)(3).

Date: March 3, 2009                    Respectfully submitted,

                                       BAKER BOTTS L.L.P.

                                       By: */s/ Bryant C. Boren Jr.*
                                          Bryant C. Boren, Jr., Attorney-in-charge
                                          State Bar No. 02664100
                                          Email:  bryant.c.boren@bakerbotts.com
                                          620 Hansen Way
                                          Palo Alto, CA 94304
                                          Telephone:  650.739.7501
                                          Facsimile:  650.739.7601

                                          Christopher W. Kennerly
                                          State Bar No. 00795077
                                          Email:  chris.kennerly@bakerbotts.com
                                          Kevin E. Cadwell
                                          State of Texas Bar No. 24036304
                                          Email:  kevin.cadwell@bakerbotts.com
                                          620 Hansen Way
                                          Palo Alto, CA 94304
                                          Telephone:  650.739.7504
                                          Facsimile:  650.739.7604

                                          Lawrence L. Germer
                                          State of Texas Bar No. 07824000
                                          Email:  llgermer@germer.com
                                          Charles W. Goehringer, Jr.
                                          State of Texas Bar No. 00793817
                                          Email:  cwgoehringer@germer.com
                                          GERMER GERTZ L.L.P.
                                          550 Fannin, Suite 400
                                          P.O. Box 4915
                                          Beaumont, Texas 77704
                                          Telephone: 409.654.6700
                                          Facsimile: 409.835.2115

                                          ATTORNEYS FOR DEFENDANT AT&T
                                          CORP.

By: */s/ James T. Hultquist* (with permission)_____

    Harry L. Gillam, Jr. (Texas Bar No. 07921800)
    GILLAM & SMITH, L.L.P.
    303 South Washington Avenue
    Marshall, Texas 75670
    Telephone: 903.934.8450
    Facsimile: 903.934.9257
    Email:  gil@gillamsmithlaw.com

    Brian D. Roche (IL Bar No. 6183795)
    James T. Hultquist (IL Bar No. 6204320)
    Jennifer Yule DePriest (IL Bar No. 6272137)
    REED SMITH LLP
    10 South Wacker Drive
    Chicago, IL 60606
    Telephone: 312.207.1000
    Email:  jhultquist@reedsmith.com

    *Counsel for Qwest Corporation and Qwest Communications Corp.*

By: */s/ Charles B. Molster, III* (with permission)_____

    Jennifer H. Doan (Texas Bar No. 08809050)
    J. Scott Andrews (Texas Bar No. 24064823)
    HALTOM & DOAN
    Crown Executive Center, Suite 100
    6500 Summerhill Road
    Texarkana, Texas 75503
    Telephone:  (903) 255-1000
    Facsimile:  (903) 255-0800
    Email:  jdoan@haltomdoan.com

    Charles B. Molster, III (DC Bar No. 386821)*
    cmolster@winston.com
    Winston & Strawn LLP
    1700 K Street, NW
    Washington, DC  20006
    Telephone:  (202) 282-5988
    Facsimile:  (202) 282-5100

Dan K. Webb (IL Bar No. 02954087)*
dwebb@winston.com
Peter C. McCabe III (IL Bar No. 06190379)*
pmccabe@winston.com
Winston & Strawn LLP
35 West Wacker Dr.
Chicago, Illinois 60601
Telephone:  (312) 558-5600

Pejman F. Sharifi (NY Bar No. 3923091)*
psharifi@winston.com
Winston & Strawn LLP
200 Park Avenue
New York, NY 10166-4193
Telephone:  (212) 294-6700

John Thorne (Virginia Corporate Counsel)*
john.thorne@verizon.com
Verizon Services Corp.
1515 North Courthouse Road
Fifth Floor
Arlington, Virginia 22201
Telephone:  (703) 351-3900

Leonard Charles Suchyta*
leonard.suchyta@verizon.com
Caren K. Khoo*
caren.khoo@verizon.com
Verizon Corporate Services Group Inc.
One Verizon Way
Basking Ridge, NJ  07920
Telephone:  (908) 559-5623

*Counsel  for Defendants Verizon Services Corp.,
Verizon Business Network Services Inc., and
Verizon Enterprise Delivery LLC*

* admitted *pro hac vice*

## CERTIFICATE OF CONFERENCE

I certify that on February 26, 2009, counsel for Defendants Verizon Services Corp., Verizon Business Network Services Inc., and Verizon Enterprise Delivery LLC (Charles B. Molster, III), counsel for Defendant AT&T Corp. (Christopher W. Kennerly), and counsel for Defendants Qwest Corporation and Qwest Communications Corporation (James T. Hultquist) personally conferred with counsel for Plaintiff Red River Fiber Optic Corporation (David Sochia and Steven Callahan) via telephone regarding the relief requested, in order to comply with the meet and confer requirement in Local Rule CV-7(h).

Defendants' counsel summarized the bases for requesting the relief herein, Plaintiff's counsel asked a number of questions, and Defendants' counsel responded to those questions. The parties' counsel discussed certain factors relevant to the recently clarified standard for venue transfers in patent infringement cases, including certain details regarding Defendants' accused products, witnesses, and sources of proof. Plaintiff's counsel indicated its disagreement with the relief requested. Discussions have thus conclusively ended in an impasse, leaving an open issue for the Court to resolve. Plaintiff opposes this motion.

*/s/ Christopher W. Kennerly*


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on the 3rd day of March, 2009, a true and accurate copy of the foregoing DEFENDANTS' MOTION TO TRANSFER VENUE TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION was served electronically, via CM/ECF on all counsel of record deemed to have consented to such service, and by certified mail on all other counsel of record.

*/s/ Bryant C. Boren Jr.*